IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

COLONY INSURANCE COMPANY,

        Plaintiff,

    v.

VICTORY CONSTRUCTION LLC, dba
PREMIER POOLS AND SPAS OF
OREGON; and VITALY SHAVLOVSKIY;

        Defendants.

No. 3:16-cv-00457-HZ

OPINION & ORDER

Andrew C. Lauersdorf
MALONEY LAUERSDORF REINER, PC
1111 E. Burnside St., Ste. 300
Portland, OR 97214

        Attorney for Plaintiff

Christopher B. Rounds
ROUNDS LAW OFFICE PC
1409 Franklin St., No. 217
Vancouver, WA 98660

        Attorney for Defendants

HERNÁNDEZ, District Judge:

Plaintiff Colony Insurance Company ("Colony Insurance") and Defendants Victory Construction LLC, dba Premier Pools and Spas of Oregon; and Vitaly Shavlovskiy (collectively "Victory Construction") bring cross-motions for summary judgment on the issue of whether Colony Insurance has a duty to defend and indemnify Victory Construction in two state court personal injury lawsuits. The parties submitted briefs and the Court held oral argument on March 8, 2017.

The outcome of this case hinges upon whether carbon monoxide is a "pollutant" as defined in the parties' Commercial General Liability Insurance Policy ("Policy"), such that the Policy's "Hazardous Materials Exclusion" (hereinafter, "pollution exclusion") serves to exclude coverage for claims arising from alleged carbon monoxide poisoning. The Court concludes that the plain meaning of "pollutant," as defined in the Policy, includes carbon monoxide. Thus, the Policy unambiguously excludes coverage for harm caused by carbon monoxide.

Because the state court lawsuits are based on alleged carbon monoxide poisoning, Colony Insurance does not have a duty to defend and indemnify Victory Construction. The Court grants Colony Insurance's motion for summary judgment and denies Victory Construction's motion for summary judgment.

## BACKGROUND

### I.    State Court Actions

Two lawsuits were filed in Clackamas County Circuit Court against Victory Construction. See Compl. Exs. A, B; ECF 1-1, 1-2. The lawsuits stem from the same incident. Id. The state court plaintiffs allege negligence in the installation and ventilation

of a natural gas swimming pool heater and negligence in failing to warn of the risks of

carbon monoxide poisoning associated with operating the heater in an insufficiently

ventilated area. Id. The state court plaintiffs allege that, as a result of Victory

Construction's negligence, excessive carbon monoxide filled the home and caused the

plaintiffs to be sick. Id. The state court complaints allege damages resulting from the

release of carbon monoxide from the heater. Id.

## II.      The Policy

Colony Insurance issued the Policy to Victory Construction. Defs.' Mot. Summ. J.

Ex. B, ECF 15. The Policy includes a pollution exclusion clause which modifies the

Policy. Id. at 12. The pollution exclusion provides that the Policy does not apply to:

> (1) "Bodily injury," "property damage," or "personal and advertising injury"
> which would not have occurred in whole or part but for the actual, alleged or
> threatened discharge, dispersal, seepage, migration, release or escape of
> "hazardous materials" at any time.

Id. at 12. The pollution exclusion further defines "hazardous materials" as: "'pollutants,'

lead, asbestos, silica and materials containing them." Id. The Policy defines "pollutants"

as: "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor,

soot, fumes, acids, alkalis, chemicals and waste." Id. at 27. Thus, the Policy excludes

coverage for injury or damage caused by "irritants" or "contaminants."

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material

fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The moving party bears the initial responsibility of informing the court of the basis of its

motion, and identifying those portions of "'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it

believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." <u>Fed. Trade Comm'n v. Stefanchik</u>, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. <u>Bias v. Moynihan</u>, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing <u>Celotex</u>, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. <u>Suever v. Connell</u>, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. <u>Earl v. Nielsen Media Research, Inc.</u>, 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## DISCUSSION

The parties disagree about whether the pollution exclusion relieves Colony Insurance from its duty to defend and indemnify Victory Construction in the underlying state court lawsuits.[1] The only plausible interpretation of the Policy's terms results in the conclusion that carbon monoxide is a pollutant. Thus, the pollution exclusion applies to

---

[1] One of the underlying lawsuits was submitted to arbitration and has settled. Defs.' Mot. Summ. J. 3, ECF 15. The second suit was scheduled for trial in January of 2017. <u>Id.</u>

damages caused by carbon monoxide and, therefore, Colony Insurance has no duty to defend or indemnify Victory Construction.

## I.    Oregon Law

Oregon law governs this Court's construction of the Policy and, thus, Colony Insurance's duty to defend and indemnify. Larson Constr. Co. v. Or. Auto. Ins. Co., 450 F.2d 1193, 1195 (9th Cir. 1971); Allstate Ins. Co. v. Morgan, 123 F. Supp. 3d 1266, 1272 (D. Or. 2015). The insured bears the burden of proving coverage while the insurer has the burden of proving exclusion from coverage. Id. (citing ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co., 349 Or. 117, 127, 241 P.3d 710 (2010)). If the insurer can establish that the insured is precluded from coverage, it has neither the duty to defend nor the duty to indemnify the insured. Id.

"Whether an insurer has a duty to defend presents a question of law, which is determined by comparing the terms of the insurance policy with the allegations of the complaint against the insured." Drake v. Mut. of Enumclaw Ins. Co., 167 Or. App. 475, 478, 1 P.3d 1065, 1068 (2000).

> Even if the complaint alleges some conduct outside the coverage of the policy, the insurer may still have a duty to defend if certain allegations of the complaint, without amendment, could impose liability for conduct covered by the policy. Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured.

Ledford v. Gutoski, 319 Or. 397, 400, 877 P.2d 80, 82 (1994) (citation omitted). Conversely, "[i]f the complaint does not contain allegations of covered conduct ..., then the insurer has no duty to defend." Abrams v. Gen. Star Indem. Co., 335 Or. 392, 400, 67 P.3d 931, 935 (2003); see also Siltronic Corp. v. Employers Ins. Co. of Wausau, No. 3:11-CV-1493-ST, 2015 WL 181785, at *4 (D. Or. Jan. 14, 2015). The Court must

construe exclusion clauses narrowly. <u>Am. Econ. Ins. Co. v. Hughes</u>, 121 Or. App. 183, 186, 854 P.2d 500, 501 (1993).

The Oregon Supreme Court has explained that "the primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties." <u>Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or.</u>, 313 Or. 464, 469, 836 P.2d 703, 706 (1992). Courts must determine the intention of the parties based on the terms and conditions of the insurance policy. <u>Id.</u> (citing Or. Rev. Stat. § (O.R.S.) 742.016). Courts begin with the wording of the policy, "applying any definitions that are supplied by the policy itself and otherwise presuming that words have their plain, ordinary meanings." <u>Tualatin Valley Hous. Partners v. Truck Ins. Exch.</u>, 208 Or. App. 155, 159–60, 144 P.3d 991, 993 (2006) (citing <u>Hoffman</u>, 313 Or. at 469-70, 836 P.2d at 703). "If, from that vantage point, [the Court] find[s] only one plausible interpretation of the disputed terms, [the Court's] analysis goes no further." <u>Id.</u>

On the other hand, if the disputed terms are susceptible to more than one plausible interpretation, then the Court examines the terms in the broader context of the policy as a whole. <u>Id.</u> If the Court's consideration of the policy's broader context fails to resolve the ambiguity, then the Court will construe the policy against the drafter. <u>Id.</u> However,

> [f]or a term to be ambiguous in a sense that justifies resort to the foregoing rule . . . there needs to be more than a showing of two plausible interpretations[.] Competing plausible interpretations simply establish ambiguity that will require some interpretive act by the court. This triggers a series of analytical steps, any of which may resolve the ambiguity. . . . In other words, a term is ambiguous in a sense that justifies application of the rule of construction against the insurer *only* if two or more plausible interpretations of that term withstand scrutiny, *i.e.,* continues to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole.

Hoffman, 313 Or. at 470, 836 P.2d at 706. In other words, "when two or more competing,
plausible interpretations prove to be reasonable after all other methods for resolving the
dispute over the meaning of particular words fail, *then* the rule of interpretation against
the drafter of the language becomes applicable, because the ambiguity cannot be
permitted to survive." Id. In all cases, interpretation of an insurance policy is a question
of law that is confined to the four corners of the policy without regard to extrinsic
evidence. Andres v. Am. Standard Ins. Co., 205 Or. App. 419, 424, 134 P.3d 1061
(2006).

## II.    **Pollution Exclusions Generally**

The pollution exclusion in this case is a standard provision found in commercial
general liability policies and is commonly known as a "pollution exclusion," "total
pollution exclusion," or "absolute pollution exclusion." See, e.g., Century Sur. Co. v.
Casino W., Inc., 677 F.3d 903 (9th Cir. 2012), certified question answered, 329 P.3d 614
(Nev. 2014); Apana v. TIG Ins. Co., 574 F.3d 679 (9th Cir. 2009); Larsen Oil Co. v.
Federated Serv. Ins. Co., 859 F. Supp. 434 (D. Or. 1994), aff'd, 70 F.3d 1279 (9th Cir.
1995). The scope of the pollution exclusion "has been repeatedly litigated, spawning
conflicting judicial decisions throughout the country." Apana, 574 F.3d at 682.

Most state court decisions addressing the scope of the pollution exclusion fall into
"one of two broad camps." Century Sur. Co., 677 F.3d at 908. The Ninth Circuit has
explained:

> Some courts apply the exclusion literally because they find the terms to be clear
> and unambiguous. Some have even found the exclusion clear and unambiguous
> when applied to carbon monoxide poisoning . . . Other courts have limited the
> exclusion to situations involving traditional environmental pollution, either
> because they find the terms of the exclusion to be ambiguous or because they find
> that the exclusion contradicts policyholders' reasonable expectations.

Id. (internal quotation marks and citations omitted).

The parties do not cite, and this Court does not find, a case from any Oregon court providing guidance on how to determine the scope of the pollution exclusion or whether it applies to carbon monoxide. "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007) (quoting Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 939 (9th Cir. 2001)). "If the state's highest appellate court has not decided the question presented, then [the court] must predict how the state's highest court would decide the question." Id. In doing so, the court must "take state law as it exists without speculating as to future changes in the law." Id.

## III.    Analysis of the Pollution Exclusion in this Case

This Court must predict whether the Oregon Supreme Court would conclude that carbon monoxide is an "irritant" or "contaminant," and, thus, a "pollutant" under the Policy. Each party asserts that the plain meaning of the pollution exclusion unambiguously supports its position. Victory Construction additionally advances three arguments: (1) the pollution exclusion should apply only to "traditional environmental pollution"; (2) the Court should consider the "reasonable expectations" of the policyholder in construing the pollution exclusion; or, alternatively, (3) the pollution exclusion is ambiguous and, thus, should be construed against Colony Insurance. The Court concludes that the pollution exclusion unambiguously supports Colony Insurance's position and, thus, Victory Construction's arguments are unavailing.

A.  Plain Meaning

The first step in construing an insurance policy is to examine the text of the policy to determine whether it is ambiguous; that is, whether it is susceptible to more than one plausible interpretation. Hoffman, 313 Or. at 469, 836 P.2d at 703. If it is not, the policy is interpreted in accordance with that unambiguous meaning. Id.

In this case, the Policy excludes coverage for injury and damages caused by "hazardous materials," which includes "pollutants." Policy at 12. Pollutants, in turn, are defined as "any . . . gaseous or thermal irritant or contaminant[.]" Id. at 27. Thus, if the Court construes the Policy to mean that carbon monoxide is an irritant or a contaminant, then the Policy excludes coverage for the damages claimed in the underlying state court cases.

Victory Construction argues that carbon monoxide is neither an "irritant" nor a "contaminant." According to Victory Construction, carbon monoxide is not an irritant because it is a gas that is odorless, colorless, tasteless, and harmful only in excessive amounts. Victory Construction further argues that carbon monoxide is not a contaminant because it exists in the human body and in nature and, thus, is not a foreign substance that is introduced into the environment.

Colony Insurance, on the other hand, asserts that "hazardous materials," as defined in the Policy, include carbon monoxide. In support, Colony Insurance points to the Clean Air Act, which regulates carbon monoxide as a pollutant. Colony Resp. 10 (citing 40 C.F.R. § 50.8 (2012)). In addition, the federal Environmental Protection Agency and the Oregon Department of Environmental Quality identify carbon monoxide as one of six "criteria pollutants." Id. at 11 (citing Or. Admin. R. (O.A.R.) 340-200-

0020). Colony Insurance argues that carbon monoxide causes inflammation and that it is a harmful substance when introduced in large quantities to an environment where it does not belong, such as the state court plaintiffs' home.

The Policy does not define "irritant" or "contaminant." Where a policy does not define a particular term, the Court must presume that the words have "their plain, ordinary meanings." Tualatin Valley, 208 Or. App. at 159, 144 P.3d at 993 (citing Hoffman, 313 Or. 469-70, 836 P.2d 703). Dictionary definitions can be helpful in ascertaining the plain meaning of undefined terms in the Policy. Ortiz v. State Farm Fire & Cas. Co., 244 Or. App. 355, 360, 260 P.3d 678, 681 (2011) (explaining that a common aid of interpretation is the dictionary); see also S. Cal. Counseling Ctr. v. Great Am. Ins. Co., No. 14-56169, 2016 WL 3545350, at *1 (9th Cir. June 28, 2016) (relying on dictionary definitions to determine the plain meaning of a term in an insurance policy exclusion).

Merriam-Webster's Dictionary defines irritant as "something that irritates or excites." Merriam-Webster.com, https://www.merriam-webster.com/dictionary/irritant (last visited January 19, 2017). The Merriam-Webster Medical Dictionary defines irritant as "causing irritation, specifically tending to produce inflammation." Id. One of the medical definitions of "irritate" is "to cause (an organ or tissue) to be irritable." Merriam-Webster.com, https://www.merriam-webster.com/dictionary/irritates (last visited January 19, 2017). Id. For example, "harsh soaps may irritate the skin." Id. The Oxford English Dictionary defines irritant as "an irritant substance, body, or agency" such as a poison which produces irritation and "anything that stimulates an organ to its characteristic vital action." Irritant, Oxford English Dictionary (2d ed. 2016).

As for "contaminant," Merriam-Webster's Dictionary defines the term as "something that contaminates." Merriam-Webster.com, https://www.merriam-webster.com/dictionary/contaminant (last visited January 19, 2017). To "contaminate" means to "soil, stain, corrupt, or infect by contact or association," "to make inferior or impure by admixture," or "to make unfit for use by the introduction of unwholesome or undesirable elements." Id. Similarly, the Oxford English Dictionary defines "contaminant" as "that which contaminates," and "contaminate" as "to render impure by contact or mixture; to corrupt, defile, pollute, sully, taint, infect." Contaminant and Contaminate, Oxford English Dictionary (2d ed. 2016).

The Court also considers the dictionary definition of "carbon monoxide." Merriam-Webster's Dictionary defines the term as "a colorless odorless very toxic gas CO that is formed as a product of the incomplete combustion of carbon or a carbon compound." Merriam-Webster.com, https://www.merriam-webster.com/ dictionary/ carbon%20 monoxide (last visited January 19, 2017). The Oxford English Dictionary defines "carbon monoxide" as "[a] colourless, odourless, flammable, extremely toxic gas formed by the incomplete combustion of carbon." Carbon monoxide, Oxford English Dictionary (3rd ed. 2016).

Based on a plain meaning analysis, the Court concludes that carbon monoxide is either an "irritant" or "contaminant" and, thus, is a "pollutant" under the Policy. The state court complaints allege that, as a result of the defendants' negligence, "excessive carbon monoxide filled the home," which caused plaintiffs to be sick from carbon monoxide poisoning. Compl. Ex. A at ¶ 7, Ex. B at ¶ 9. This description supports the conclusion that carbon monoxide irritates an organ or tissue, so much so that it can cause serious

illness or death. The plaintiffs in the state court case were physically irritated by the carbon monoxide. Furthermore, the plain meaning of "contaminant" as an undesirable element whose introduction soils or makes an environment unfit for use comports with the description of carbon monoxide filling the state court plaintiffs' home and making it uninhabitable.

Many other courts have similarly concluded that carbon monoxide is a "pollutant" as defined in the pollution exclusion. See Claudia G. Catalano, What Constitutes "Pollutant," "Contaminant," "Irritant," or "Waste" Within Meaning of Absolute or Total Pollution Exclusion in Liability Insurance Policy," 98 A.L.R. 5th 193 (2002) (electronic version updated weekly) (collecting cases). See also, e.g., Church Mut. Ins. Co. v. Clay Ctr. Christian Church, 746 F.3d 375, 381-82 (8th Cir. 2014) (predicting that the Nebraska Supreme Court would conclude that carbon monoxide is a pollutant because it is a gas that can render air "unfit for use" if introduced at high levels); Century Sur. Co., 677 F.3d at 908 (noting that some courts have found the pollution exclusion "clear and unambiguous when applied to carbon monoxide poisoning"); Nautilus Ins. Co. v. Country Oaks Apartments Ltd., 566 F.3d 452 (5th Cir. 2009) (holding that "[i]t could not be clearer" that carbon monoxide is a pollutant under the exclusion and rejecting the argument that "a substance must generally or usually act as an irritant or contaminant to constitute a 'pollutant'"); Longaberger Co. v. U.S. Fid. & Guar. Co., 201 F.3d 441 (6th Cir. 1999) (unpublished decision) (affirming district court holding that carbon monoxide is a pollutant); Shaw v. Liberty Mut. Fire Ins. Co., No. 6:15-CV-686-ORL-TBS, 2016 WL 561409, at *4 (M.D. Fla. Feb. 12, 2016), reconsideration denied, No. 6:15-CV-686-ORL-TBS, 2016 WL 7228754 (M.D. Fla. Apr. 25, 2016) ("while carbon monoxide is a

naturally occurring gas that is present in the air we breathe, it is also an irritant, contaminant, and toxic at the level of concentration experienced by the [plaintiffs.] Therefore, carbon monoxide clearly and unambiguously fits within the definition of a "pollutant" under the Policy."); Midwest Family Mut. Ins. Co. v. Wolters, 831 N.W.2d 628, 637 (Minn. 2013) ("While there may be substances that are difficult to establish as 'pollutants' for purposes of the absolute pollution exclusion, carbon monoxide is not one of them.").

Admittedly, many other courts have reached the opposite conclusion. See, e.g., Apana, 574 F.3d at 682-83 (collecting cases). However, for the reasons explained below, this Court declines to apply any of the analytical approaches employed by those courts in reaching their conclusion.

B.  "Traditional Environmental Pollution"

Even assuming that the Policy's use of the terms "irritant" and "contaminant" encompass carbon monoxide, Victory Construction asks this Court to apply the pollution exclusion only to "traditional environmental pollution." Victory Construction correctly notes that federal and state court cases are split on the issue of whether the pollution exclusion bars coverage for all injuries caused by pollution, or whether the exclusion applies only to injuries caused by traditional, or outdoor, environmental pollution.

The Ninth Circuit acknowledged this split in authority in Apana, which involved an interpretation of Hawaii law, and noted that the Court's resolution of the split would be dispositive of that case. 574 F.3d at 683. Because the Ninth Circuit could not discern how Hawaii courts would resolve the issue, the Ninth Circuit certified the following question to the Hawaii Supreme Court:

> Does a total pollution exclusion provision in a standard commercial general liability insurance policy apply to localized uses of toxic substances in the ordinary course of business (such as when a plumber uses chemicals to open a clogged drain and an employee working nearby inhales the fumes and suffers injuries), or is it limited to situations that a reasonable layperson would consider traditional environmental pollution?

Apana, 574 F.3d at 684. Before the Hawaii Supreme Court could answer the question, however, the parties settled. Apana v. TIG Ins. Co., No. 29942, 2010 WL 1434763, at *1 (Haw. Apr. 7, 2010); see also Nautilus Ins. Co. v. Hawk Transp. Servs., LLC, 792 F. Supp. 2d 1123, 1134 (D. Haw. 2011).

Three years after the Ninth Circuit certified the question to the Hawaii Supreme Court, it faced a similar question on appeal from the District Court of Nevada.[2] The Ninth Circuit chose to certify the following question to the Nevada Supreme Court: "Does the pollution exclusion in Century's insurance policy exclude coverage of claims arising from carbon monoxide exposure?" Century Sur. Co., 677 F.3d at 905. The Nevada Supreme Court concluded that the pollution exclusion was ambiguous because it was subject to multiple reasonable interpretations, including the interpretation limiting the exclusion's applicability to "traditional environmental pollution." Century Sur. Co. v. Casino W., Inc., 329 P.3d 614, 615 (Nev. 2014).

The Nevada Supreme Court provided background information regarding the pollution exclusion's drafting history:

> The absolute pollution exclusion's drafting history further supports the conclusion that the exclusion was designed to apply only to outdoor, environmental pollution. Other courts have recognized that the pollution exclusion was traditionally included in insurance policies to avoid the potentially grand expense resulting from *environmental* litigation. The theory underlying such exclusions appears to be that, if an insured knows that his or her policy covers any type of pollution, he or she may take fewer precautions to ensure that such environmental

---

[2] While the pollution exclusion at issue in Century Surety is not identical to the one in this case, the policy terms that are relevant to the Court's analysis are identical.

> contaminations do not occur. Thus, in the absence of an exclusion covering environmental pollution, an insurer could incur huge financial costs for litigation stemming from such pollution. In light of these principles, courts have determined that—from the insurers' standpoint—the exclusion was designed to protect against the yawning extent of potential liability arising from the gradual or repeated discharge of hazardous substances into the environment.

Id., 329 P.3d 614, 617–18 (Nev. 2014) (internal quotation marks and citations removed). The court concluded that the pollution exclusion did not bar coverage for injuries caused by carbon monoxide because such injuries were not caused by outdoor environmental pollution. Id.

The analysis provided by the Nevada Supreme Court, based on the pollution exclusion's history, offers insight into the potential intention of including such a clause in standard commercial general liability policies. See also Headwaters Res., Inc. v. Illinois Union Ins. Co., 770 F.3d 885, 893 (10th Cir. 2014) ("As a historical note, the 'total pollution exclusion' . . . has evolved over the past forty years as an effort by the insurance industry to limit its liability for the potentially large costs associated with environmental litigation."). However, because the analytical approach used by the Nevada Supreme Court differs from that adopted by the Oregon Supreme Court, the Century Surety analysis is of limited value to this Court.

Unlike in Oregon, the Nevada Supreme Court has held that whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted. Powell v. Liberty Mut. Fire Ins. Co., 127 Nev. 156, 162, 252 P.3d 668, 672 (2011) ("Ultimately, a court should interpret an insurance policy to 'effectuate the reasonable expectations of the insured.'"). "To preclude coverage under an insurance policy's exclusion provision, an insurer must (1) draft the exclusion in 'obvious and unambiguous language,' (2) demonstrate that the interpretation excluding coverage is the

only reasonable interpretation of the exclusionary provision, and (3) establish that the exclusion plainly applies to the particular case before the court." Century Sur. Co., 329 P.3d at 616 (citing Powell, 127 Nev. at 165, 252 P.3d at 674). Because the Nevada Supreme Court found the pollution exclusion to permit multiple reasonable interpretations of coverage, it concluded that the exclusion was ambiguous. Id. at 616-18. Therefore, the Court interpreted the exclusion to effectuate what it determined would be the insured's reasonable expectations—that the exclusion only applies to traditional environmental pollution. Id.

This Court's analysis is different. In Oregon, the Court is not tasked with considering alternative plausible interpretations of the pollution exclusion when the Policy terms' plain meaning resolves the case. Hoffman, 313 Or. at 470, 836 P.2d at 706.

The analysis employed by the Iowa Supreme Court is more similar to that used by the Oregon Supreme Court and, thus, offers guidance to this Court. In 2005, the United States District Court for the Northern District of Iowa addressed a pollution exclusion that was identical, in relevant terms, to the exclusion at issue in this case. Bituminous Cas. Corp. v. Sand Livestock Sys., Inc., No. C04-4028-PAZ, 2005 WL 1476441 (N.D. Iowa June 22, 2005), certified question answered, 728 N.W.2d 216 (Iowa 2007). In Bituminous, an employee at a hog confinement facility died from asphyxiation due to the release of carbon monoxide fumes from a propane power washer. Id. at 2. The district court certified the following question to the Iowa Supreme Court:

> Do the total pollution exclusions in the policies issued by Bituminous to Sand Livestock relieve Bituminous from any obligation to defend or indemnify Sand Livestock, or to pay damages to Mrs. Gossage, for claims arising out of the death of Raymond Gossage?

Id. at  14.

The Iowa Supreme Court concluded that the pollution exclusion barred coverage for the death caused by carbon monoxide poisoning. <u>Bituminous Cas. Corp. v. Sand Livestock Sys., Inc.</u>, 728 N.W.2d 216, 222 (Iowa 2007). The court explained that the pollution exclusion was unambiguous and, thus, the court declined to consider the drafting history or original intent of the exclusion:

> An ambiguity exists only if the language of the exclusion is susceptible to two interpretations. We may not refer to extrinsic evidence in order to create ambiguity. Instead, we must enforce unambiguous exclusions as written. The plain language in the exclusions encompasses the injury at issue here because carbon monoxide is a gaseous irritant or contaminant, which was released from the propane power washer.

<u>Id.</u>

This Court predicts that the Oregon Supreme Court's analysis would be similar to the analysis of the Iowa Supreme Court. As in <u>Bituminous</u>, this Court does not even get to the point of considering the exclusion's drafting history, multiple reasonable interpretations of the policy, or the policyholder's reasonable expectations, because the plain meaning of the words "irritant" and "contaminant" resolve the case. This Court must follow the interpretative framework set out by the Oregon Supreme Court.

C.  Reasonable Expectations Doctrine

Victory Construction also contends that this Court should apply the "reasonable expectations" doctrine to conclude that a reasonable policyholder would not expect the exclusion to encompass carbon monoxide emitted from a residential heater. Many courts across the country have done what Victory Construction urges. <u>See</u> <u>Apana</u>, 574 F.3d 679, 682 (collecting cases). However, as with the historical analysis discussed above, the reasonable expectations doctrine is only relevant if this Court determines that it would be adopted and applied by the Oregon Supreme Court if faced with this case.

In other words, would the Oregon Supreme Court consider the reasonable expectations of the policyholder in assessing whether the pollution exclusion is ambiguous? The parties agree that the Oregon Supreme Court has not explicitly adopted or rejected the doctrine of reasonable expectations. See Collins v. Farmers Ins. Co. of Or., 312 Or. 337, 365, 822 P.2d 1146, 1162 (1991) (Unis, J. dissenting). However, Victory Construction contends that several cases suggest that an Oregon state court would apply some form of the reasonable expectations doctrine.

Victory Construction points to Justice Unis' dissent in Collins, in which he wrote that "language in at least two of our recent opinions . . . suggests support for the [reasonable expectations] doctrine." Id. Justice Unis wrote:

> In Totten v. New York Life Ins. Co., 298 Or. 765, 771, 696 P.2d 1082 (1985), this court said: "We interpret the terms of an insurance policy according to what we perceive to be the understanding of the ordinary purchaser of insurance." That principle is also stated in Botts v. Hartford Acc. & Indem. Co., 284 Or. 95, 100, 585 P.2d 657 (1978). Moreover, various past members of this court have expressed their preference for the "reasonable expectation" approach, see, e.g., Lewis v. Aetna Insurance Co., 264 Or. 314, 323-24, 505 P.2d 914 (1973) (Bryson, J., specially concurring, joined by McAllister, J.).

Id. Justice Unis wrote that "at some point" the court would have to address whether a policyholder's reasonable expectations to coverage under the insurance policy should be honored even though those expectations vary from the policy provisions. Id. at 362, 365; 822 P.2d 1160, 1162.

However, despite Justice Unis' opinion in 1991, Oregon courts have not, in fact, addressed whether to adopt the reasonable expectations doctrine. In several cases following Collins, Oregon courts have interpreted the meaning of insurance contracts without incorporating the policyholder's reasonable expectations into an analysis as to whether the plain language of the policy is ambiguous. See, e.g., Holloway v. Republic

Indem. Co. of Am., 341 Or. 642, 650, 147 P.3d 329, 333 (2006) (following Hoffman without any mention of reasonable expectations); Groshong v. Mut. of Enumclaw Ins. Co., 329 Or. 303, 314, 985 P.2d 1284, 1290 (1999) (using the wording of the phrase at issue and the context in which the wording occurs to analyze whether the phrase is ambiguous, without any consideration of the policyholder's reasonable expectations); Hoffman, 313 Or. at 477, 836 P.2d at 710 (setting out framework for determining whether a policy provision is ambiguous and failing to discuss reasonable expectations doctrine); Andres v. Am. Standard Ins. Co. of Wis., 205 Or. App. 419, 424, 134 P.3d 1061, 1063 (2006) ("Whatever the reason, the court has been clear since Hoffman Construction Co. that the interpretation of insurance policies is a question of law, not one that is resolved by reference to evidence extrinsic to the policy itself."); Garrett v. State Farm Mut. Ins. Co., 112 Or. App. 539, 543–44, 829 P.2d 713, 715–16 (1992) ("Contracts of insurance are like other written contracts in that the intention of the parties controls and when the language is plain and unambiguous, the intention of the parties is determined by the policy language."). Notably, Victory Construction does not cite to any case after 1991 in which the Oregon courts discuss whether to apply the doctrine of reasonable expectations.

Furthermore, the doctrine of reasonable expectations appears to be inconsistent with Oregon's statutes governing the construction of insurance contracts. O.R.S. 742.016 provides that "every contract of insurance shall be construed according to the terms and conditions of the policy," and makes no mention of reasonable expectations. Similarly, O.R.S. 42.230 states that, "[i]n the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not

to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all." This Court will not insert an analysis of the policyholder's reasonable expectations, in the absence of any such terms or substance within the Policy itself.

D.  Ambiguity

Finally, Victory Construction argues, alternatively, that the pollution exclusion is ambiguous and should therefore be construed against the drafter, Colony Insurance. At oral argument, Victory Construction cited an Oregon Supreme Court case from 1954. See I-L Logging Co. v. Manufacturers & Wholesalers Indem. Exch., 202 Or. 277, 316, 275 P.2d 226, 230 (1954). Victory Construction argued that I-L Logging demonstrates that the existence of conflicting court decisions on the interpretation of a certain policy provision is evidence that the provision may be ambiguous.

Victory Construction is correct that I-L Logging adopted the rule that "the very fact that a number of courts have reached conflicting conclusions as to the interpretation of a certain provision is frequently considered evidence of ambiguity." Id. at 317, 275 P.2d at 231. However, the Oregon Supreme Court also qualified its statement:

> The fact remains, nevertheless, that it is but one of the many secondary rules for the construction of insurance contracts that have been established by court decisions, and, like most other rules of construction, depends for its application and effect upon the particular facts before the court

Id.

Here, this Court is not persuaded by the fact that many courts have reached conflicting conclusions regarding the scope of the pollution exclusion. For the reasons explained above, the plain meaning of the terms of the pollution exclusion unambiguously encompasses injury and damage caused by carbon monoxide. Thus, the Court's analysis ends.

E.  Policy Considerations

The Court reiterates that its task in this case is not to determine whether or not the Policy should cover damages due to carbon monoxide poisoning but, rather, whether the Oregon Supreme Court would be likely to find that the Policy's pollution exclusion should be read narrowly in order provide such coverage. The Court concurs with the conclusions of courts from across the country that a reasonable policyholder might be likely to assume that the Policy would cover damages caused by carbon monoxide exposure, notwithstanding the pollution exclusion. Therefore, the result of this case may be "regrettably harsh." See Midwest Family, 831 N.W. 2d at 638. However, "the place to settle the public policy issues underlying this exclusion is in the marketplace or by legislative action." Id. The Policy, as written, does not create any ambiguity that would lead this Court to believe that the Oregon Supreme Court would look outside the plain meaning of the Policy's terms.

///

///

///

///

///

21 – OPINION & ORDER

**CONCLUSION**

The Policy excludes coverage for claims brought in the underlying state court lawsuits because carbon monoxide is a "pollutant," as defined in the Policy's pollution exclusion clause. Therefore, Colony Insurance does not have a duty to defend or indemnify Victory Construction. The Court grants Colony Insurance's Motion for Summary Judgment [16] and denies Victory Construction's Motion for Summary Judgment [15].

IT IS SO ORDERED.

Dated this _____ day of _____, 2017.

_____
MARCO A. HERNÁNDEZ
United States District Judge